## SWIFT *v.* SWIFT *et al.*

The allegations of the petition were not sufficient to withstand the force of the demurrers thereto interposed by the defendants and sustained by the court.

Argued February 11,—Decided April 17, 1909.

Complaint. Before Judge Martin. Muscogee superior court. August 18, 1908.

Charles J. Swift brought an action against Edward W. Swift and James P. Kyle, to recover damages which he alleged he had sustained at their hands. The substance of the petition was as follows: On or about January 26, 1897, George P. Swift died in the city of Columbus, Georgia, leaving a will with three codicils thereunto annexed, and leaving surviving him his children, Helen W. Murphy, Charles J. Swift (the petitioner), Elizabeth Shorter, Addie B. Kyle, and Edward W. Swift. By the terms of the will

and codicils Edward W. Swift and James P. Kyle, the husband of Addie B. Kyle, were nominated and appointed executors, without bonds. The will was duly probated in both common and solemn forms, and the executors ·entered upon the discharge of their duties thereunder, and have been executors up to the time of filing this petition. By the terms of the will and codicils the executors were not required to file a sworn inventory and appraisement of the estate, but 'were required to make a list or inventory of the property comprising the estate, for their own guidance and convenience and for the information of the legatees. They have never filed any sworn inventory and appraisement. The will and codicils provided, among other things, that the residue of the estate, mentioned in the fourth item, be given absolutely and without limitation to petitioner and the other surviving children mentioned in the will, including Edward W. Swift, and be equally divided among them, share and share alike. Said residue included seven designated lots of land in Thomas county, Ga., of about 250 acres each, aggregating 2095½ acres. At the time of the death of his father, and for a number of years prior thereto, petitioner was a resident of San Francisco, California. Several weeks after his father's death petitioner arrived at Columbus, Ga., and during his visit there, in 1897, he sought information from the executors of what the residue of the estate consisted. To his inquiries concerning said Thomas county lands, as to their nature, character, and value—he being under the impression that they were valuable pine timber lands—he was told by the executors that, while these lands formerly constituted a tract of pine timber land, they had been "so despoiled and vandalized of the timber that they had lost their value and character as timber land, which information created the impression in the mind of the petitioner that the tract had become a barren sandy waste, . . with no value attaching thereto . . on account of the pine and other timber that had at one time been on them." The executors and defendants well knew that petitioner had never seen these lands; and until July, 1899, and for several years thereafter, he knew nothing of the value and character of such lands, except through the information that he got from the defendants as executors; and they well knew that he relied upon them for such information, and that he had trusted, relied upon, and believed their representations as to the character

and value of such lands. Until some months after defendants took charge of said estate they made no list of the property of the estate that he ever saw, and on or about June, 1898, "petitioner saw wherein the said defendants as executors gave the valuations to said Thomas county lands of $2.00 per acre, and only mentioned them as 'lands' and as 'uncultivated;' which continued the impression and belief in the mind of petitioner that they had become practically worthless as timber lands." "In pursuance of an overture for settlement between petitioner on the one hand and the said defendants as executors as aforesaid, and the said Edward W. Swift, Elizabeth M. Shorter, and Addie B. Kyle, as legatees aforesaid, . . Edward W. Swift represented, for the purposes of said settlement, that he had the sanction and authority of his sisters last aforesaid, together with James P. Kyle representing his wife, on or about the first of July, 1899, petitioner agreed that if the executors would furnish him a full, correct, and complete list of all property of said estate, together with its true, full, and correct character and value, he would submit his terms for a settlement; [and] in the afternoon of that day, in pursuance of such understanding, he examined the list with the values and character of the property contained therein, and which had been given to him by said defendants as a true, full, and correct valuation and character and nature of all the property." Defendants as executors were familiar with the character and value of all the property of the estate, and petitioner was not, and especially of the Thomas county lands, and for information concerning the same petitioner relied upon the defendants as executors. "The one item of property which petitioner knew nothing about, except through information furnished him by the said defendants, was the said Thomas county lands." In listing these lands at only $2.00 per acre, "and having previously represented to petitioner that they had lost their character and value as pine timber lands, and describing them as 'lands' and 'uncultivated,' when their real nature and character were those of virgin pine timber lands, the said defendants knowingly and intentionally thereby misled, deceived, and misrepresented to petitioner both the value and character of said lands. At the time of said settlement these lands were reasonably worth $15.00 per acre, being "the finest and most valuable large tract of virgin pine timber lands in southwest Georgia." "As a part of

said settlement . . petitioner sold his one-fifth interest in said Thomas county lands to Edward W. Swift, Elizabeth M. Shorter, and Addie B. Kyle, at the rate of $2.00 per acre." After such settlement and until the latter part of July, 1904, petitioner was out of the State of Georgia a great deal of the time. On or about July 25, 1904, he met a resident of Thomasville, Ga., who told him of certain lands belonging to the Swift estate of Columbus, Ga., which, he said, were "one of the largest and most valuable bodies of· virgin pine timber land in Georgia." It was not until after about the 20th of July, 1904, that petitioner had any knowledge, or entertained any suspicion, that the said lands were otherwise in value and character than they had been represented to him by the defendants. Defendants at the time of the settlement referred to. well knew that these lands were worth a great deal more than $2.00 per acre, that they had not been denuded of timber to the extent of decreasing their value; "and, with intent to deceive and defraud petitioner, they wilfully and deceitfully concealed from petitioner the real value and character of said lands, and . . knowingly misrepresented to [him] .the true value and character of said lands, for the purpose of inducing [him] to part with his title to said lands." He, having confidence and faith in the defendants "and the list of values which they furnished him, . . relied on [their] good faith and representations, . . and he was thereby induced to and did part with his title in a one-fifth undivided interest in said lands for the sum of two dollars per acre, to his injury and damage," etc.

The petition was demurred to, both generally and specially. Among the grounds of special demurrer were the following: (3) "It appearing that the specified lands constituted only a portion of the alleged residue to be equally divided, it is not averred in what constituted the balance of the residue .to be equally divided; nor· does it appear that the entire residue was not equally divided as directed by the will among those entitled thereto." (6) "It appears that the alleged sale by plaintiff at the price complained of was negotiated and made as a part and in' consideration of an equal division and distribution of all the items of the residue, and it does not appear what the other items were or what of them plaintiff received; nor does it appear that such settlement and distribution as a whole, including said land transaction, was not

fair and equitable to the plaintiff; nor does it appear that plaintiff, taking into account the alleged low price for the land, did not get in the settlement of the entire residue his just and equal share thereof." (7) "It appearing that said land transaction was only a part of a consummated settlement of the residue, the plaintiff has not nor does he propose to rescind the entire settlement nor restore the original status, which it appears would be necessary in order for an equitable and just distribution of said residue, if such distribution has not already been made." (8) "It appears that the alleged settlement . . was fully consummated, and that plaintiff received thereunder sundry large benefits and properties, which he does not restore or offer to restore to defendants or any one of them, nor does he restore the status as at that state of said settlement; and that, without such restoration or offer thereof, the plaintiff is not entitled in law or equity to rescind or disturb the particular portion or portions of said settlement attacked." The demurrers were sustained and the petition dismissed; whereupon the plaintiff excepted. (See 129 *Ga.* 848.)

*Charles J. Swift* and *J. L. Willis,* for plaintiff.

*Goetchius & Chappell,* for defendants.

FISH, C. J. (After stating the facts.) It will be seen that the plaintiff's complaint is that he, as one of the residuary legatees under the will of his father, made a settlement with three of the other residuary legatees, and that he, as a part of said settlement, sold his undivided one-fifth interest in certain Thomas county lands, forming a part of the residue of the testator's estate, to them for much less than such one-fifth interest was really worth, and that he was induced to do this by certain representations of the defendants, who were executors of the will, as to the character and value of these lands, made in response to his inquiries upon the subject, and by the valuation placed upon these lands in a list of the property of the estate furnished him by the executors, which representations and valuation he alleges were false and fraudulent and made for the purpose of misleading, deceiving, and defrauding him. He appears, from the allegations of his petition, to have made the settlement in which he claims to have been defrauded with his brother, Edward W. Swift, and his sisters, Elizabeth M. Shorter and Addie B. Kyle, his other sister, Helen W. Murphy, not being a party thereto. How he could effect a settlement as to his inter-

est in the residuum of his father's estate with only three of the other residuary legatees, when there were five residuary legatees equally interested in the property forming such residuum, it is hard to understand. Of course, he might have sold his interest as a residuary legatee to the three other residuary legatees who participated with him in the settlement, or to any one of them; but, according to his petition, he did not do this, but entered into a settlement with three of the other residuary legatees and the executors, "and as a part of said settlement . . sold his one-fifth interest in said Thomas county lands." But no point appears to have been made on this peculiarity of his petition. It will be observed, from the allegations of the petition, that the alleged misrepresentations as to the character and value of these lands, other than the mere valuation placed upon them in the list of the property of the estate furnished to the plaintiff for his inspection at the time he offered to submit his terms for a settlement with the other residuary legatees, were made by the defendants in the early part of 1897, more than two years before he had even so much as indicated to them any desire, purpose, or intention to have a settlement with the other residuary legatees, and when, so far as his petition shows, there was no intention on his part to obtain his distributive share of the residuum of his father's estate through a settlement with his colegatees. So the allegations that the defendants in 1897 wilfully and fraudulently misrepresented to the plaintiff the character and value of these Thomas county lands, for the purpose of inducing him to part with his interest therein for a sum much less than the real value of such interest, were not well pleaded, the facts alleged not being sufficient to sustain such a conclusion. The same may be said with reference to the vague and hazy allegation that the plaintiff in June, 1898, "saw wherein the said defendants as executors gave valuations to the said Thomas county lands of $2.00 per acre, and only mentioned them as 'lands' and as 'uncultivated.'" Besides, if this can be taken to refer to a list, or written statement, of the properties of the estate and the respective valuations of the same, made by the executors, there is nothing whatever to show that this list or statement was prepared or intended merely for the inspection of the plaintiff, but the inference is strong that it was a list or statement prepared by the executors for their own guidance and convenience

and the information of all persons interested in the estate. So far as the petition shows, the only false or misleading information which the defendants gave to the plaintiff after they knew, or had any reason to believe, that he desired information upon which to base a proposition for a settlement with the other residuary legatees, was the mere valuation of $2.00 per acre placed upon the Thomas county lands in question in the list of the property of the estate which they furnished to him in July, 1899, which valuation, it appears from the petition, had been placed by the executors, upon these lands, and which list the petition indicates had been prepared long before they knew that he contemplated making such a settlement. Moreover, the petition does not allege that at the time the defendants furnished this list to the plaintiff they knew, or had any reason to believe, that he contemplated selling his interest in these lands to his colegatees, or to any one else. But waiving all these criticisms of the petition and others which might be made thereon, and taking it for granted that the defendants did wilfully and fraudulently deceive him as to the value of these Thomas county lands, for the purpose of inducing him, in a settlement with the other residuary legatees, to part with his interest therein at a price much less than its true worth, still the petition is fatally defective in that it fails to show that the plaintiff really suffered any loss or damage in the settlement. The petition fails to disclose what the terms of the settlement were, what other properties besides these Thomas county lands were involved therein, how such other properties respectively were valued, whether they were all estimated in the settlement at their true values, or, like these Thomas county lands, were estimated at much less than they were really worth, or which, if any, of them were overestimated and which were underestimated; and it fails to show that the aggregate value of the property which the plaintiff received in the settlement was not equal to the aggregate value of that which was received by each of the other legatees. He seeks to segregate and separate "a part of said settlement" which he had with the other legatees, and to recover damages, because, if this particular portion of the settlement is isolated and considered entirely apart from the rest of the same, it appears that he was worsted in the settlement, when, for aught that appears in the petition, it may be that in other parts of the settlement the advantage was all on his side, and that

the general result of the same was reasonably fair and just to all the parties interested therein, or, perhaps, that in the aggregate value of the properties which he received as his portion of the residuum of the estate he really received more than the value of his distributive share thereof. The other properties involved in the settlement, or some of them at least, might have been as much undervalued in the list which the defendants furnished to the plaintiff, and in the settlement which he made with the three other legatees, as were these Thomas county lands; and the other legatees concerned in the settlement might have conveyed to the plaintiff their interests in property of the estate upon a valuation which was such as to counterbalance the undervaluation of his interest in these lands, or even at a valuation which was such as to more than compensate him for any loss which he might otherwise have sustained in consequence of the undervaluation of his interest in the lands in question. He seeks to turn the light on only one isolated portion of the transaction, leaving the rest in darkness. He ought to have turned the light on the whole, so that it could be seen whether he really suffered any loss in the settlement between himself and these other residuary legatees, in consequence of his reliance on the valuation which the defendants, as executors, had placed upon these Thomas county lands. It is somewhat significant that he does not seek to set aside the settlement which he alleges he had with three of his colegatees, on account of the fraud which he alleges was practiced upon him by one of them in person and by the agents who acted for the others in the transaction, and to have a new and fair division and distribution of the property between the residuary legatees. But he holds on to all the property which he received in the settlement, and seeks to recover of the defendants damages because in one isolated item of such settlement, separated and considered entirely apart from the other matters involved therein, he appears to have got the worst of the bargain. So far as his petition shows, he might have got the best of the bargain in the transaction considered as a whole. It seems obvious that it can not be ascertained whether he was really injured and damaged by the mere undervaluation which he alleges was placed by the executors upon these Thomas county lands, unless and until there is a full disclosure as to the other properties involved in the settlement, the nature, character, and real value

of each item thereof and the valuation placed upon it in the settlement and how it was disposed of therein. A fatal defect in his petition, therefore, is that it does not show that he really sustained any loss by reason of the alleged false and fraudulent undervaluation of these lands. A mere general allegation that he was injured and damaged in a specified sum is a mere conclusion of his own, as he does not allege all the facts which it is necessary to consider in order to determine whether this is true or not. This general averment as to damages sustained by him might, perhaps, be sufficient in the absence of a special demurrer calling for more specific information as to the facts upon which it was based, but will not do when attacked by the grounds of special demurrer set forth in the statement of facts. The trial court committed no error in sustaining these grounds.

> *Judgment affirmed. All the Justices concur.*